IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ROSEMARIE WHEELER,<br>　　　　*Plaintiff*<br><br>-vs-<br><br>SAFECO INSURANCE COMPANY OF<br>INDIANA,<br>　　　　*Defendant* | §<br>§<br>§　　SA-21-CV-00343-XR<br>§<br>§<br>§<br>§<br>§<br>§ |

# ORDER

On this date, the Court considered the parties' cross motions for summary judgement (ECF Nos. 20, 21). After careful consideration, the Court issues the following order.

### BACKGROUND[1]

This case arises out of a dispute between Plaintiff Rosemarie Wheeler[2] ("Wheeler") and Defendant Safeco Insurance Company of Indiana ("Safeco") regarding a claim for damage to Wheeler's residence, which she contends was caused by a hailstorm in San Antonio, Texas on or about May 28, 2020. ECF No. 21-3 at 3; ECF No. 21-4 at 2.

James Wheeler first reported damage to his residence on May 30, 2020. ECF No. 20-1 at 2. Safeco scheduled an inspection to determine the cause and extent of the reported damage. Doug Lehr ("Lehr"), an inspector for Safeco, inspected the property on June 13, 2020. ECF No. 20-3 at 6. Lehr's investigation included an assessment of the metal roof, both the interior and exterior of the home, other structures, and outdoor personal property. *Id.* Lehr observed hail indentations to the roof. *Id.* As Wheeler's Policy contains a cosmetic-damage exclusion for damage to the metal roof, Lehr retained an engineering firm, Rimkus Consulting, to determine

---

[1] These facts are undisputed unless otherwise noted.
[2] Rosemarie Wheeler's husband, James Wheeler, was the original plaintiff in this action. *See* ECF No. 1. Rosemarie Wheeler was substituted as Plaintiff in this case pursuant to Federal Rule of Civil Procedure 25(a). ECF No. 32.

1

whether the damage to the metal roof was cosmetic or structural. *Id.*; ECF No. 20-2 at 60. Erik Valle, an engineer employed by Rimkus Consulting, inspected the property on June 26, 2020. ECF No. 20-4 at 4. Valle determined there was non-cosmetic damage to the metal roof's ridge and high-cap panels, but the other dents to the roof panels were cosmetic and had not affected the roof's functionality. *Id.* at 5.

After receiving Valle's report, Lehr prepared an estimate addressing damage to Wheeler's residence, including the exterior elevations, repairs to the window screens, front and back decks, personal property items, stucco, garage door panel, shingles and trim on the detached home, air condenser, and to the main home's roof's ridge and high-cap panels. ECF No. 20-1 at 3; ECF No. 20-5 at 3–7. Safeco issued payment to Wheeler based on Lehr's estimate and denied coverage for the damage to the metal roof panels based on the Policy's cosmetic-damage exclusion. ECF No. 20-1 at 3; ECF No. 20-3 at 4.

Wheeler then retained public adjuster Elvis Spoon, who prepared an estimate including a complete roof replacement, which totaled $140,617.62. ECF No. 20-16 at 3. Spoon disagreed that the roof damage was cosmetic but did not provide any additional information to dispute Valle's determination. ECF No. 20-9 at 2–3. Therefore, Safeco stood on its earlier denial. *See id.* at 2.

Wheeler originally brought this lawsuit in state court, alleging that Safeco breached the insurance policy and various extra-contractual duties in the payment and handling of her claim. ECF No. 1-2. Wheeler's complaint is twofold: First, Wheeler takes issue with Safeco's application of the cosmetic-damage exclusion. Second, Wheeler contests Safeco's position that she is not entitled to replacement cost benefits under the Policy unless she spends replacement

costs in excess of the actual cash value of her claim, accounting for her deductible. Safeco removed the case to this Court on the basis of diversity jurisdiction. ECF No. 1.

Wheeler now moves for declaratory and summary judgment as to her breach of contract claim. ECF No. 21. Safeco additionally moves for summary judgment as to Wheeler's extra-contractual claims. ECF No. 20.

## DISCUSSION

### I. Declaratory Judgment

Wheeler seeks two declarations from this Court: First, that the "Policy definition of 'cosmetic loss or damage' is not ambiguous, and no other definition of cosmetic should be considered by this Court or the jury is resolving this dispute." ECF No. 21 at 3. Second, Wheeler seeks a declaration that the "[P]olicy allows recovery of replacement cost benefits on an item by item basis for 'that part of the property' repaired or replaced up to the amount actually . . . incurred . . . and does not require an insured to spend an amount in excess of the actual cash value payment of the entire loss prior to accessing replacement cost benefits." *Id.* Safeco opposes Wheeler's request for declaratory relief, arguing that the sought-after declarations merely recast her breach of contract claims already pending before the Court. ECF No. 26 at 2–3.

The Declaratory Judgment Act ("DJA") provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a). "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). "Courts have declined to exercise their discretion to decide declaratory judgment actions where deciding

3

that action would be redundant in light of the affirmative causes of action before the Court." *Amerisure Ins. Co. v. Thermacor Process, Inc.*, No. 4:20-cv-01089-P, 2021 WL 1056435, at *7 (N.D. Tex. Mar. 19, 2021) (collecting cases); *see also Berkseth-Rojas v. Aspen Am. Ins. Co.*, 513 F. Supp. 3d 724, 733 (N.D. Tex. 2021) ("Accordingly, her declaratory judgment claims are subject to dismissal as well because they are duplicative of her contract claims.").

Wheeler's request for declaratory relief is duplicative of her affirmative causes of action pending before the Court. Here, Wheeler's breach of contract claim has placed the construction of the contested Policy provisions at issue. *See* ECF No. 1-2 at 10–11. While Wheeler contends that Safeco's alleged misapplication of the Policy provisions has the potential to confuse the fact finder, this does not warrant declaratory relief, as "[t]he purpose of the Declaratory Judgment Act is to settle 'actual controversies' *before* they ripen into violations of law or breach of some contractual duty." *Chevron U.S.A. v. Traillour Oil Co.*, 987 F.2d 1138, 1154 (5th Cir. 1993) (quoting *Hardware Mut. Cas. Co. v. Schantz*, 178 F.2d 779, 780 (5th Cir. 1949)) (emphasis added). The key issues to be decided in this case—whether the damage sustained to the Property is covered by the Policy and if Safeco properly handled Wheeler's claims—are based on actions that have already occurred and have been presented as affirmative causes of action to the Court. Thus, the Court denies Wheeler's request for declaratory relief.

## II. Summary Judgment

### A. Legal Standard

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving

party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en banc*, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of South Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

For the Court to conclude that there are no genuine issues of material fact, the Court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the Court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the

moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party, *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

### B. Plaintiff's Motion for Summary Judgment

Wheeler moves for summary judgment as to her breach of contract claim against Safeco. ECF No. 21 at 9. Specifically, Wheeler argues that Safeco has not met its burden to prove that the hail damage to her roof is cosmetic and therefore excluded under the Policy. *Id.* at 13.

In Texas, the elements of a breach of contract claim are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Certain Underwriters at Lloyd's of London v. Lowen Valley View, LLC*, 892 F.3d 167, 170 (5th Cir. 2018) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l LLC*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)). The parties here do not dispute that the Policy at issue is a valid contract. Rather, Wheeler's claim solely turns on whether Safeco breached the contract by denying coverage. "[A] breach of contract occurs when a party fails or refuses to do something he has promised to do." *Townewest Homeowners Ass'n, Inc. v. Warner Commc'n Inc.*, 826 S.W.2d 638, 640 (Tex. App.—Houston [14th Dist.] 1992, no writ). "Generally, a court determines what conduct is required by the parties—i.e., what duties exist under a contract. But, insofar as a dispute exists concerning the failure of a party to perform a contract, the court submits the disputed fact questions to the fact finder." *Vast Const., LLC v. CTC Contractors, LLC*, 526 S.W.3d 709, 718 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (internal quotations

and citations omitted).

The burden of establishing coverage rests upon the insured. *Century Sur. Co. v. Hardscape Const. Specialties Inc.*, 578 F.3d 262, 265 (5th Cir. 2009) (applying Texas law). The burden of establishing an exclusion to coverage rests upon the insurer. *Id.* If the insurer demonstrates that an exclusion arguably applies, the burden shifts back to the insured to show the claim does not fall within the exclusion or that it comes within an exception to the exclusion. *Id.*; *see also Bldg. Specialties, Inc. v. Liberty Mut. Fire Ins. Co.*, 712 F. Supp. 2d 628, 635–36 (S.D. Tex. 2010).

As stated, the parties do not dispute that the Policy is valid, and that the Policy provided insurance coverage to the Wheeler's residence, including the metal roof, in the event of damage from a wind or hailstorm. ECF No. 21-1 at 24. Therefore, Safeco has the burden to show that an exception to coverage applies. Safeco points to the Policy's exclusion for any cosmetic loss or damage to the metal roof. The Policy defines "cosmetic loss or damage" as "any loss that is limited to the physical appearance of a metal roof surface." *Id.* at 59.

Safeco has presented evidence that the cosmetic-damage exclusion may apply. After his inspection of the roof, Valle concluded that "[t]he effects of hail on the metal roof panels were cosmetic in nature and did not cause[] functional/structural damage to the metal panels." ECF No. 20-4 at 9.[3] Valle further explained:

---

[3] Wheeler objects to Safeco's use of the Valle's report, contending Safeco may not use Valle's conclusions "as an undisputed fact" when her expert, Edward Fronapfel, expressly disagrees with Valle's findings. ECF No. 27 at 3. The Court does not rely on Valle's report to conclude that the damage is in fact cosmetic. Instead, as will be discussed, the Court recognizes that the experts' conflicting conclusions creates a genuine dispute of material fact as to whether the damage to the metal roof is cosmetic or non-cosmetic. The Court additionally relies on Valle's report in discussing Wheeler's extra-contractual claims, but again, not in agreement with Valle's conclusions; rather, to determine if Valle's report gave Safeco a reasonable basis to deny Wheeler's claim. *See State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 458 (Tex. 1997) (concluding that an insurer's reliance on an expert's report will not support a finding of bad faith unless "there is evidence that the report was not objectively prepared or the insurer's reliance on the report was unreasonable.").

> We observed impact dents on all the roof slopes . . . . However, the impacts did not chip or scratch the protective coating of the metal roof panels at the circular dents, and the panel seams had not been distorted or separated by hail impacts to an extent that the water-shedding ability or the fastening strength of the panels would be affected. Thus, the hail impacts had not diminished the water-shedding functionality of the metal roofing or its service life. . . . [T]he load-carrying of the roof slopes remained unaffected. Additionally, industry studies have shown that similar magnitude of dents had no effects on the long-term performance or the structural integrity of the metal roofing system.

*Id.* After reviewing Valle's report, Lehr applied Valle's findings to the Policy's language and determined that the damage to the metal roof panels was cosmetic and thus not covered by the Policy. ECF No. 20-1 at 2–3. Whether such actions violated the Policy—in other words, whether the damage to the roof was non-cosmetic—is a question of fact that cannot be resolved on summary judgment. *See Vast Const., LLC*, 526 S.W.3d at 718.

In addition, Safeco's retained expert, Jordan Beckner, has likewise concluded that the damage to the metal roof panels is cosmetic. *See* ECF No. 21-4 at 2. Beckner "did not observe any dents . . . that split, fractured, or punctured the metal." *Id.* at 8. Beckner examined the larger hail dents under magnification, and "did not observe any splits, cracks, or fractures in the metal and/or disruption" of the roof's protective coating. *Id.* Further, Beckner noted that "none of the observed dents at the field panel seams had opened, disengaged, or otherwise compromised their watertight assembly." *Id.* at 9. As such, Beckner concluded that "[t]here was no evidence that the hail-caused dents in the panel have resulted in functional damage . . . . The hail-caused dents are considered cosmetic or aesthetic in nature." *Id.* at 20. Beckner's conclusions raise a fact issue as to whether the damage to the roof was cosmetic or non-cosmetic.

Wheeler argues that Safeco's experts' opinions are not relevant and "offer no probative

---

Wheeler additionally objects to certain excerpts of the deposition of her husband, James Wheeler. ECF No. 27 at 3. As the Court does not rely on this evidence, Wheeler's objection is moot at this stage of the litigation.

value [as] to whether the damage [to] Plaintiff's roof is confined to 'cosmetic' as that term is defined in the Policy." ECF No. 21 at 12–13. Thus, Wheeler contends, Safeco has not met its burden to demonstrate the cosmetic-damage exclusion arguably applies in this case. *Id.* "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. Valle and Beckner's reports concerning the nature of the damage to the roof are certainly relevant. To be sure, neither Beckner nor Valle applied the Policy's definition of "cosmetic damage" in their findings. *See* Beckner Dep. 23:22–25:1 (acknowledging Beckner is not familiar with the Policy's definition of "cosmetic damage"); ECF No. 20-4 at 9 (discussing whether the damage impacted the metal roof's service life and water-shedding capacity). However, this does not change the Court's opinion. Beckner and Valle have offered their conclusions as engineers, not as insurance adjusters.[4] Wheeler's objection to their testimony, thus, goes to the weight of the evidence rather than its relevance. Both of their investigations and findings could lead a jury to conclude that it is more probable that the damage to the metal roof "is limited to [its] physical appearance," as "cosmetic damage" is defined in the Policy. ECF No. 21-1 at 59. Therefore, Safeco has met its burden to show an exclusion to coverage may apply.

Because there is genuine dispute of material fact as to whether the damage to Wheeler's metal roof panels was cosmetic or non-cosmetic, and thus whether Safeco failed to perform under the contract, the Court denies summary judgment as to Wheeler's breach of contract claim.[5]

---

[4] Indeed, Wheeler's expert engineer, Edward Fronapfel, similarly testified that his testimony would be limited to: "continuous progressive issues, what the coating is there for, how impacting the coating could cause further deterioration or corrosion, effective useful life, serviceability performance, and then the structural performance based upon the studies, that's what I would anticipate my testimony in regards to the definition of damage would be, as an engineer." Fronapfel Dep. 56:19–57:7.

[5] Wheeler additionally moved for summary judgment as to Safeco's affirmative defenses of material breach, failure of consideration, mitigation, failure of a condition precedent, concurrent causation and failure to segregate,

## C. Defendant's Motion for Summary Judgment

Safeco moves for summary judgment as to Wheeler's extra-contractual claims. Wheeler asserts that Safeco violated Chapter 541 of the Texas Insurance Code by (1) refusing to pay Plaintiff's claim without conducting a reasonable investigation of Wheeler's claims; (2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which her liability has become reasonably clear; and (3) failing to promptly provide a reasonable explanation of the basis in law or fact for the denial of Wheeler's claims. ECF No. 1-2 at 8–9. Wheeler further asserts claims under Chapter 542 of the Texas Insurance Code. *Id.* at 8. Specifically, Wheeler takes issue with Safeco's application of the cosmetic-damage exclusion in denying her claim for damage to the metal roof panels and Safeco withholding replacement cost benefits under the Policy.

### 1. Wheeler's claim that Safeco unreasonably investigated her insurance claim is not supported by any evidence.

Wheeler alleges that Safeco improperly investigated her insurance claim. An insurer is obligated to adequately investigate a claim before denying it. *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 n.5 (Tex. 1997). "The scope of the appropriate investigation will vary with the claim's nature and value and the complexity of the factual issues involved." *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44–45 (Tex. 1998). "An insurer does not act in bad faith where a reasonable investigation reveals the claim is questionable." *United Servs. Auto. Ass'n v. Croft*, 175 S.W.3d 457, 471 (Tex. App.—Dallas 2005, no pet.). If an insurer fails to conduct a reasonable investigation, it cannot assert that a bona fide coverage dispute exists. *Simmons*, 963 S.W.2d at 44. An insurer fails to reasonably investigate a claim if the investigation is conducted

---

failure to provide notice of a claim, failure to provide materials for notice of loss, equitable estoppel, and waiver. ECF No. 21 at 15–20. As Safeco withdrew those defenses in response, ECF No. 26 at 9, the Court will not discuss these issues.

as a pretext for denying the claim. *See, e.g.*, *Nicolau*, 951 S.W.2d at 458 (finding that where there is evidence that an expert's report was not objectively prepared, summary judgement is not appropriate); *Simmons*, 963 S.W.2d at 45 (finding an "outcome-oriented" investigation unreasonable). An insurer's reliance on an expert's report will not support a finding of bad faith unless "there is evidence that the report was not objectively prepared or the insurer's reliance on the report was unreasonable." *Nicolau*, 951 S.W.2d at 448.

Wheeler argues that reasonableness is ordinarily an issue of fact, and therefore her extra-contractual claims are not subject to summary judgment. ECF No. 27 at 7. However, a Court may still decide a bad faith claim as a matter of law if there is no conflict in evidence. *Giles*, 950 S.W.2d at 56 ("A court may be entitled to decide an issue as a matter of law when there is no conflict in the evidence, but when there is evidence on either side, the issue is a fact question."); *see also Alvarez v. State Farm Lloyds*, No. SA-18-CV-01191-XR, 2020 WL 1033657, at *4 n.2 (W.D. Tex. Mar. 2, 2020) (collecting cases). Texas courts regularly determine on summary judgment whether a fact dispute exists as to the insurer's denial of coverage. *See Alvarez*, 2020 WL 1033657, at *4 n.2. Thus, Wheeler's argument that her extra-contractual claims are not within the ambit of summary judgment is unavailing.

Here, there is no conflict in evidence because there is no evidence that Valle's report was not objectively prepared or that Safeco's reliance on the report was unreasonable. The undisputed evidence in the record shows that soon after Wheeler reported the hail damage to the roof, Safeco took reasonable steps to investigate Wheeler's claim. *See* ECF No. 20-3 at 7. Lehr retained a professional engineer, Valle, because he was unable to determine whether the damage to the metal roof was cosmetic or non-cosmetic after his visual inspection. *Id.* at 5. Valle inspected the roof and took photographs, looking for any chipping or scratching in the roof's

protective coating and distortion or separation in the panel seams. *See* ECF No. 20-4 at 9–26. Valle concluded that roof's ridge and hip-cap panels had sustained structural damage, but the remainder of the dents on the roof's panels were cosmetic. *Id.* at 9. Lehr reviewed Valle's findings, applied Valle's conclusions to the Policy's language, and denied coverage as to the metal roof panels. ECF No. 20-3 at 4. Wheeler then engaged a public adjuster, Elvis Spoon, who prepared an estimate to replace the entire metal roof. *Id.* However, Spoon did not provide additional information at that time to dispute Safeco's earlier determination that the damage to the roof panels was cosmetic. *See id.* at 3; ECF No. 20-9 at 2–3. Thus, Safeco stood on its earlier denial. ECF No. 20-3 at 3; ECF No. 20-9 at 2–3.

Wheeler asserts that Safeco's investigation was unreasonable because Valle and Beckner have "relied on irrelevant definitions of cosmetic that are inconsistent with the definition expressly provided in the Policy." ECF No. 27 at 5. However, an insurer does not act in bad faith if they are incorrect as to the proper construction of the policy. *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 18 (Tex. 1994). Where the dispute concerns "the factual basis for the claim, the proper legal interpretation of the policy, or both," such claims are subject to a breach of contract analysis rather than bad faith. *Id.*; *see also Davis v. Nat'l Lloyds Ins. Co.*, 484 S.W.3d 459, 474 (Tex. App.—Houston [1st Dist.] 2015, pet. denied); *Southland Lloyds Ins. Co. v. Cantu*, 399 S.W.3d 558, 568 (Tex. App.—San Antonio 2011, pet. denied). Safeco investigated the claim, and while there is a dispute over whether Safeco properly denied coverage, Safeco may deny coverage based on a misapplication of the policy without being subject to bad-faith liability.

> **2. There is no evidence that Safeco denied coverage when its liability was reasonably clear under the Policy.**

Wheeler contends that Safeco failed to pay her claim when its liability under the insurance policy was reasonably clear. To prevail on such a claim, "the insured must establish

the absence of a reasonable basis for denying or delaying payment of the claim and that the insurer knew, or should have known, that there was no reasonable basis for denying or delaying payment of the claim." *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997) (citing *Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210, 213 (Tex. 1988)). In other words, the insured bears the burden to prove that "there were no facts before the insurer which, if believed, would justify denial of the claim." *Higginbotham*, 103 F.3d at 459 (citing *State Farm Lloyds Inc. v. Polasek*, 847 S.W.3d 279, 284 (Tex. App.—San Antonio 1992, writ denied)). "[T]he issue of bad faith does not focus on whether the claim was valid, but on the reasonableness of the insurer's conduct in rejecting the claim." *Lyons v. Miller Cas. Ins. Co.*, 866 S.W.2d 597, 601 (Tex. 1993). Texas courts have repeatedly held that "evidence showing only a bona fide coverage dispute does not, standing alone, demonstrate bad faith." *Nicolau*, 951 S.W.2d at 448 (citing *Moriel*, 879 S.W.2d at 17).

Wheeler claims that Safeco knew or should have known that its liability with respect to the metal roof panels was reasonably clear because its experts applied "erroneous" definitions of "cosmetic." ECF No. 27 at 7. However, Wheeler has only presented evidence that a bona fide coverage dispute exists. As discussed *supra*, Safeco conducted a reasonable investigation and there is no evidence that Valle's report was not objectively prepared or unreliable. Thus, Safeco was permitted to rely on its expert report in denying Wheeler's claim. The undisputed evidence in the record demonstrates that Safeco had a reasonable basis for denying Wheeler's claim— Valle's report. Wheeler merely points to evidence of a bona fide coverage dispute as to the application of the cosmetic-damage exclusion and has not met her burden to establish there were no facts before Safeco that justified the denial of her claim.

### 3. The alleged misrepresentation cannot support a claim under Chapter 541.

Wheeler and Safeco dispute when Wheeler is entitled to replacement cost benefits under the Policy. Safeco asserts that Wheeler is not entitled to replacement cost benefits until her deductible is met and she spends more than the actual cash value of her claim. Wheeler objects that this is a material misrepresentation of the Policy's terms and thus violates sections 541.051 and 541.061 of the Insurance Code. ECF No. 27 at 12. However, Wheeler offers no evidence to show that she relied on Safeco's alleged misrepresentation for any purpose or that the misrepresentation caused her any injury. Reliance and causation are both elements of misrepresentation claims brought under Chapter 541. *Partain v. Mid-Continent Specialty Ins. Svcs., Inc.*, 838 F. Supp. 2d 547, 558 (S.D. Tex. 2012) (collecting cases); *see also Wellisch v. United Servs. Auto. Ass'n*, 75 S.W.3d 53, 59 (Tex. App.—San Antonio 2002, pet. denied) ("To recover damages under either the common law or the Insurance Code and DTPA, the violations must be a producing cause of the insured's damages.") (internal quotation marks and citations omitted). Additionally, Wheeler and Safeco's dispute hinges on their respective interpretations of the Policy and how the insured's deductible factors into the recovery of replacement cost benefits. As discussed, where the dispute concerns "the proper legal interpretation of the policy," such claims are subject to a breach of contract analysis. *Moriel*, 879 S.W.2d at 18. Therefore, the Court grants summary judgment as to Wheeler's extra-contractual claims.[6]

### 4. Chapter 542 Claims

Wheeler additionally brings extra-contractual claims pursuant to Texas Insurance Code Chapter 542. ECF No. 1-2 at 7–8. First, Wheeler alleges that Safeco violated the Texas Prompt Payment Act ("TPPA") in handling her claim. *Id.* at 8. However, Safeco has not briefed this

---

[6] Because the Court concludes that Safeco is entitled to summary judgment as to all of Wheeler's Chapter 541 extra-contractual claims, it will not discuss Wheeler's entitlement to actual and treble damages for these claims.

issue and thus has failed to demonstrate that there is no genuine dispute of material fact as to Wheeler's TPPA claim. As such, Wheeler's TPPA claim remains unchallenged and may proceed to trial.

Second, Wheeler alleges that Safeco "forced Plaintiff to file this suit by offering substantially less than the amount of covered damages" in violation of section 542.003(b)(5) of the Texas Insurance Code. ECF No. 1-2 at 7. A court may *sua sponte* dismiss claims for failure to state a claim. *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006). While ordinarily a court must give a plaintiff an opportunity to respond before dismissal, it need not do so if the plaintiff's response would be futile. *See Anokwuru v. City of Houston*, 990 F.3d 956, 967 (5th Cir. 2021) (quoting *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 643 (5th Cir. 2007) ("At times, we will uphold a dismissal *sua spont*e without requiring notice, 'as long as the plaintiff has alleged his best case.'")). Here, Wheeler cannot state a claim for relief under section 542.003 because it does not authorize a private cause of action. *Terry v. Safeco Ins. Co. of Am.*, 930 F. Supp. 2d 702, 714 (S.D. Tex. 2013) ("The Unfair Settlement Practices Act refers to enforcement by the Texas Department of Insurance and the State Attorney General."); *Great Am. Assurance Co. v. Wills*, No. SA-10-CV-353-XR, 2012 WL 39620367, at *2 (W.D. Tex. Sept. 10, 2012). Because no private cause of action exists under section 542.003 and Wheeler cannot amend her claim to state a claim for relief under the statute, the Court grants summary judgment on this claim.[7]

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for declaratory and summary judgment (ECF No. 21) is **DENIED**. Defendant's motion for summary judgment (ECF No. 20) is

---

[7] Wheeler also alleges a violation of Chapter 542A in her state court petition; however, this appears to be a typo. Therefore, the Court does not address this claim.

15

**GRANTED**. Plaintiff's Chapter 541 and section 542.003 claims are **DISMISSED WITH PREJUDICE**. Plaintiff's breach of contract and Texas Prompt Payment Act claims remain pending.

It is so **ORDERED**.

**SIGNED** this 29th day of April, 2022.

                                            XAVIER RODRIGUEZ
                                            UNITED STATES DISTRICT JUDGE